Good morning. My name is Robert Andrews and I represent Brian K. Rogers in this matter. If I may be allowed one minute for rebuttal at the end of my presentation. Chief Judge Howard, Judge Thompson, Judge Barron, may it please the court. When the district court characterized Mr. Rogers' argument as silliness, he demonstrated just how much we fail to account for the classic penalty situation in Fifth Amendment jurisprudence. It was an error for him to fail to account for that. And it's an error that has been repeated in the government's brief. In this case, Mr. Rogers was subject to repeated polygraph examinations as part of what is characterized as sex offender treatment. Although that sex offender treatment is really just an extended interrogation. Repeatedly throughout his treatment or his interrogation, Mr. Rogers was reluctant to reveal any personal information. Because of that reluctance, the coercion of the polygraph and the penalty that flowed from that, Mr. Rogers' statements that formed the basis for this revocation of the supervised release were coerced. And the district court should not have considered any of those statements as evidence of Mr. Rogers' failure to complete sex offender treatment. The penalty in this case worked in two ways. The first of which was he was directly required to engage in the polygraph by the district court. And he was also required to engage in sex offender treatment. The polygraph examinations were required as part of both of those requirements. So when the government and the court are suggesting that he was really terminated because he didn't complete sex offender treatment, what they're really saying is that he wouldn't engage in the polygraph examination and he wouldn't reveal the information that the treatment providers and the probation officers wanted. So Condition 4 stated that no violation proceeding will arise solely on defendant's failure to pass a polygraph examination or on the defendant's refusal to answer polygraph questions based upon Fifth Amendment privilege. That is one way that the Fifth Amendment offers protection here. There is a second way that the Fifth Amendment offers protection here. So what is the argument that he had the right and was notified of the right to refuse to answer the questions and that there wouldn't be a violation solely based upon him exercising that right? Well, we can see what happened here with respect to how they made the decision to terminate him from sex offender treatment. It wasn't in a strict sense. Well, you didn't pass the test. You failed the test. So we're saying that failure is a violation of your conditions. And you wouldn't meet with your probation officer because the counselor had indicated that if he met with his probation officer on a particular date, then he would consider keeping him in the program. You blew everything off. And the purpose of that is because he didn't want to talk. And I think the Fifth Amendment gives him the right not to talk. Well, it might give him a right not to talk, but does it give him a right not to show up? Well, I think that it gives him a right since the idea of behavioral modification or behavioral surveillance in the containment model of treatment is really just a way of saying, we need you to talk, and if you don't talk, then we're going to say you're not participating. If you're not participating. There's two different, there's talking and then there's incriminating oneself. That's right. So you're not arguing to us that it's a Fifth Amendment problem or a due process problem to require him to talk in ways that do not incriminate himself. I, and I, that is, that is true. Okay, so then we're down to the question of whether there's a problem because he was required to incriminate himself. But then you have the condition language that Judge Thompson just asked you about. So what is your response to that? Well, my response to that is that Murphy doesn't say specifically you can't just, you have the right just to not answer questions that directly incriminate yourself. And we know that the right to self-incrimination is broader than that. And what we have here is a man who is trying to. Whatever the scope of it is, the only thing you're complaining about, understandably, are those statements that would fall within the scope of the right not to incriminate oneself. That's right. Okay, and that condition or language that Judge Thompson just read you encompasses all of that scope by plain terms. Well, I mean. So what, so the question still remains. What, given that limitation on the requirement to answer questions in the polygraph, causes there to be a problem here? I'm just not understanding the argument. Well, so the idea here is that the interrogation was over many months and went from May when he was released until September when they made the decision to finally terminate him. Right. I think that the interrogation itself is coercive enough and that the penalty that he faces for not answering those questions is significant enough so that the court can find that all of his responses are coerced and therefore involuntary and as such can't be used at all with respect to revoking his terms of supervised release. That is my response to that. I don't think that it's just a matter of, well, they asked him questions about prepubescent pornography, which in fact would be a crime. I don't think that it was just that he had the right not to answer that question. I think he had a right not to answer any of the questions about his access to Internet-capable devices. I think that he had... But what I'm saying is, given the language Judge Thompson just read you that's in the condition to submit to the polygraph, if he's right that the answer to any of those things fall within the Fifth Amendment right not to incriminate oneself, then it can't be held against him that he would invoke that privilege. Well, I think that it can also be self-executing under Garrick, and that's really what we're looking for. The idea that he had to invoke the Fifth Amendment, I'm not going to answer you. I think that that is not the extent of his Fifth Amendment privilege. But if he invoked the Fifth, and rightfully so, and the condition specifically says it cannot be an independent basis for violating him, I guess I'm not understanding the argument either. Are you saying that there's something so... It's inherently coercive just by virtue of the fact that the questions are asked, and there are other ramifications if he doesn't answer? Yes, that is what I am saying. The issue here isn't the court said, well, you didn't pass the test, or you didn't answer the questions, so we're revoking your supervised release. Instead it's saying, well, the answers you provided led to your expulsion from sex offender treatment. And that's the reason why we're revoking your supervised release. They're so intertwined that they can't really be separated. Mr. Andrews, can I ask a question? What if there were no polygraph involved in any of this? Is the, as you call it, the extended interrogation over many months, is that a problem in and of itself? I mean, I thought that probationers and supervised releasees had to be truthful if they choose to answer. And I believe that it is a problem, but not one that needs to be addressed here, because the polygraph itself... What is it that the polygraph adds to that, if that's really what the problem is? The polygraph is used as a coercive tool. It's a three-hour interview where you are asked questions beforehand, then you are connected to a machine, that machine takes biometrics, and someone forms an opinion about whether you're truthful or not, all of which is designed to create stress on the person that is engaged in the test. But isn't it designed actually to impress upon one that they need to be truthful? I don't... And if it has the effect, but not the purpose of what you're suggesting, is there a balancing that needs to be done? Well, and I'm intrigued by that question, because the idea here is, yes, it could impress upon truthful, but it's not admissible under the ordinary sense, and we're not in a courtroom where that kind of stress could ordinarily be the appropriate function. And that's where we go to today in Colorado, the idea that maybe there needs to be something within the sex offender treatment where he could challenge whether he is participating or not. Thank you. Good morning, Your Honors. May it please the Court, Benjamin Block on behalf of the United States. I'd like to begin just with a brief rebuttal to my opponent's last point, which is that there was somehow an absence of due process protections here in this case. Mr. Rogers had written notice from his probation officer in the form of a petition for revocation of supervised release. He had multiple meetings with his probation officer before the revocation petition was filed, at which he could have expressed his concerns regarding the nature of the sex offender treatment. He then had a full counsel proceeding before a district court judge, at which point he could have expressed any of his concerns regarding the nature of the sex offender treatment, and he did not avail himself of any of those. This is the first time that we've heard a complaint about his desire to participate in sex offender treatment, but his inability to do so was here in this appeal. And, in fact, in his final meeting with his probation officer before the revocation petition was filed, he told his probation officer that he would rather be revoked than continue supervision. So I think there is really no basis for a due process claim here. He had ample process in which he could have expressed his concerns. Can you explain what is meant by it can't be the sole basis? Well, I think this case is actually an excellent example of how this process works in real life. In New York, this court approved the use of polygraph testing in response to a facial complaint with the understanding that. Wasn't the language and the condition in New York different than here? Only slightly. It said it couldn't be used here. It can't be the sole basis, which suggests that it could be in combination with other things. It can be part of the basis. What does the government think it means? Does it mean identical to what York said, so the word sole really isn't doing anything? Or is the suggestion that the way this condition works is it can be held against you to some extent that you're not answering the question? I just can't quite figure it out. No, I think as your honor noted in the hood decision, if you if you apply the word sole only to his. If you if you apply the words, it's well, there was an ambiguity about what to apply it to. But that's a different point, I think, than the question of once we apply it to the privilege. Right. There's a footnote in the hood that says it's possible that it could trigger an investigation. Yes. But in the hood, like here, the defendant didn't spell out. What the circumstances would be in the defendant's view as to when the investigation would be triggered and what circumstances. So I'm just trying to get a sense since we keep seeing this condition in this form. My concern is that the way this works in practice in Seoul is kind of an end run around York, because what it enables you to do is say, well, we're not going to hold it against you. But actually, if you don't answer, we can investigate further just because you didn't answer. And that does seem potentially coercive. Well, again, here we didn't have any refusal to answer. There was no invocation of the privilege. So we don't have a true opportunity to test how that provision would be applied in the face of someone who did invoke the Fifth Amendment. But I think what's clear from this case is that his participation in the polygraph test was really a minor component of the ultimate decision to revoke him. His performance on supervised release is simply replete with his failures to comply or participate in the program. I guess what I'm asking is if there's two different persons in sex offender treatment and they have the exact same profile, except one of them refused to answer a polygraph question on Fifth Amendment grounds and one of them did not. Is the one who refused to answer on Fifth Amendment grounds because of the way this condition is written more likely to be investigated? I wouldn't say so. I think that. But does that mean that the word solely is just in the government's view, not really doing any work? And actually, we should be just like York, which is it cannot be held against you in any way. No, I don't think. I don't think York says that you can't. Well, York says that an invocation can't be used against you in any way. So here the invocation cannot be the sole basis. So does that mean it can be held against you to some extent? It wouldn't be that it can be held against you to some extent. It's that the invocation may, as the provision notes, lead to a separate investigation. Isn't that holding it against you? No. A person is burdened by virtue of invoking the privilege in that sense, right? Or are you just saying that's not a burden? I would say invoking the privilege is not a burden. No. The price of invoking the privilege is that you are going to be now investigated more intensively than you otherwise would. Or is that not what? Yes. I think that could be an outcome, but I don't think it's one that's constitutionally problematic. A defendant doesn't have a right to conceal criminal activity from the authorities beyond not answering. So he chooses not to answer, and as a result of that, probation decides to take a closer look at the contents of his phone or do a residential search, which is permitted under supervised release conditions. Those are other methods of ensuring compliance with the terms of supervised release that do not implicate the Fifth Amendment. So I think solely in the provision, it's designed to acknowledge the fact that invocation may have some consequences, but they're not of constitutional significance. And indeed, those other consequences have to remain permissible in order to have effective supervision. I would also make the point that this argument that Mr. Rogers felt compelled to participate in the polygraph testing in order to avoid revocation is sort of underlined by the fact that that is the only part of his substantive treatment that he fully participated in. He didn't complete workbook assignments. He didn't participate in his group meetings. And indeed, the information that he is claiming should be protected by the Fifth Amendment, with one exception, is not information that would otherwise be incriminating. Viewing of adult pornography is not the basis for a separate criminal charge. Possessing an Internet-enabled device is not the basis for a separate criminal charge. This type of information is not protected by the Fifth Amendment, and it's governed instead by a probationer's general obligation to appear and answer questions honestly. So really, the only question that tended to expose him to additional criminal liability was the one question of, have you viewed preprobation pornography? And he did not invoke, and his response to that question really didn't form the basis for the ultimate revocation, because as both his probation officer and his treating clinician testified, they would have been perfectly willing to continue supervised release and sex offender treatment had he shown any motivation whatsoever to participate in the program. And he simply didn't do so. Instead, he said he would rather be incarcerated than be on supervised release. So I just think there's no basis for finding a Fifth Amendment violation here, and the government would ask the court to affirm. Thank you. I would like to address the point of participation in the treatment program. All of the things that Mr. Locke has laid out are directly related to talking or providing or being a witness against oneself. And because all of these things are within the chain that Mr. Rogers has a right to not reveal, I think that that's why this is a Fifth Amendment problem. I also believe that this is of constitutional significance. It was of constitutional significance in McCune, and I don't think that that has changed over the years since McCune. The issue there was that there simply wasn't enough penalty for it to be of constitutional significance. There's no doubt here that going back to prison is of significant constitutional significance in terms of penalty. Thank you.